UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LONNIE CLEO RIGDON,   )   | |
| )   | |
| Plaintiff,   )   | Civil Action No. 5: 14-263-DCR |
| )   | |
| V.   )   | |
| )   | |
| CAROLYN W. COLVIN,   )   | |
| Acting Commissioner of Social Security,   )   | **MEMORANDUM OPINION** |
| )   | **AND ORDER** |
| )   | |
| Defendant.   )   | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Lonnie Cleo Rigdon ("Rigdon" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 14, 15] Rigdon argues that the administrative law judge ("ALJ") assigned to his case erred by failing to characterize his alleged depression as a severe impairment, finding that he could stand or walk for less than four hours in an eight hour workday, and concluding that there is sufficient work in the national economy which he can perform. [Record No. 14-1] The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Rigdon.

- 1 -

**I.**

On May 17, 2011, Rigdon filed an application for supplemental security income under Title XVI of the Social Security Act ("the Act"). [*See* Record No. 7-1; Administrative Transcript, "Tr.," p. 12.] He alleges a disability beginning March 29, 2011. Rigdon, along with non-attorney representative Pamela Hofer and vocational expert ("VE") Tina Stambaugh, appeared before ALJ Ronald M. Kayser on January 24, 2013, for an administrative hearing. [Tr., pp. 27–60] On March 18, 2013, the ALJ found that Rigdon was not disabled under section 1614(a)(3)(A) of the Act. [Tr., pp. 12–22] Rigdon filed an appeal with the SSA's Appeals Council. However, this appeal was denied on May 13, 2014. [Tr., pp. 1–3]

Rigdon was 46 years old when his alleged disability began on March 29, 2011, and 48 years old at the time of the ALJ's decision. He has a high school education and previously worked as a salvage laborer and lumber stacker. [Tr., pp. 21] In his initial application, Rigdon alleged that he became unable to work due to chronic obstructive pulmonary disease ("COPD"). [Tr., p. 150] After considering the testimony presented at the administrative hearing and reviewing the record, the ALJ determined that Rigdon suffers from the following severe impairments: (1) COPD status post respiratory failure with placement of tracheostomy; (2) phlebitis / history of deep venous thrombosis; and (3) morbid obesity. [Tr., p. 14] Despite these impairments, the ALJ determined that Rigdon maintained the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> [Rigdon] can lift 20 pounds occasionally and up to 10 pounds frequently; can sit for six hours in an eight hour period; can stand or walk for less than four hours in an eight hour period; no limits in pushing or pulling beyond the exertional limitations; and the claimant cannot climb ropes, ladders, or scaffolds. Due to his breathing, the claimant should avoid exposure to temperature extremes, should avoid exposure to concentrated dust, fumes, and chemicals, and the claimant should avoid exposure to full body vibration, humidity, and wetness.

[Tr., pp. 16–17]

After considering Rigdon's age, education, work experience, and RFC, the ALJ concluded that there were a significant number of jobs in the national economy that the Claimant could perform, including sedentary inspector or sorter, sedentary packer, and sedentary factory helper. [Tr., pp. 21–22] As a result, the ALJ determined that Rigdon was not disabled from March 29, 2011, through the date of the administrative decision. [Tr., p. 22]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

(6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

#### A. Severe Impairments

Rigdon first argues that the ALJ erred by failing to classify his alleged depression as a severe impairment. [Record No. 14-1 pp. 2–5] He asserts that he was diagnosed with a single episode major depressive disorder on December 17, 2012, and continued to suffer from depression NOS (not otherwise specified) at the time of his administrative hearing. [*Id.*] While the ALJ evaluated Rigdon's alleged depression, he found that it was not severe because it did not cause more than mild limitations on his ability to work during the relevant

period. [Tr., p. 14] Nonetheless, the ALJ proceeded past step two of the sequential evaluation process and analyzed both Rigdon's severe and nonsevere impairments.

It is the claimant's burden to prove the severity of his impairments at the second step of the sequential evaluation process. *See Her*, 203 F.3d at 391. A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The Sixth Circuit has held that "the severity determination is 'a *de minimis hurdle* in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs, v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. Additionally, the mere diagnosis of a condition does not thereby establish its severity. *Id.* at 863.

At step two, the ALJ determined that Rigdon suffered from severe impairments, including COPD status post respiratory failure with placement of tracheostomy, phlebitis/history of deep venous thrombosis, and morbid obesity. [Tr., p. 14] Once step two is cleared by determining that some severe impairments exist, the ALJ must then consider a claimant's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457; SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). "The fact that some of [a claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony*, 266 F. App'x at 457. As a result, any alleged omission of Rigdon's depression from the list of severe impairments does not necessary undermine the ALJ's decision. *See id.*; *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d

240, 244 (6th Cir. 1987); *Talos v. Comm'r of Soc. Sec.*, No. 11-CV-13207, 2012 WL 1392156, at *8 (E.D. Mich. Mar. 26, 2012).

Here, the ALJ continued to consider Rigdon's alleged depression throughout the entirety of the disability analysis. When determining Rigdon's RFC, the ALJ stated that "the undersigned has considered all symptoms and the extent to which these symptoms can be accepted as consistent with the objective medical evidence," including nonsevere impairments. [Tr., p. 17] Further, the ALJ noted that he "consider[ed] the entire record" in determining that the Claimant had the ability to perform light work. [Tr., p. 20] Therefore, because the ALJ found that Rigdon has some severe impairments, he proceeded to complete the remaining steps of the analysis and it then became "legally irrelevant" that Rigdon's depression was not found to be severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008). In short, the ALJ's failure to find that the alleged depression qualified as a severe impairment is not reversible error. *Riepen v. Comm'r of Soc. Sec.*, 198 F. App'x 414, 415 (6th Cir. 2006) (finding that even if the ALJ should have found that the plaintiff's multiple sclerosis was also a severe impairment, the failure to do so "would not be a basis for reversal or remand because the ALJ considered all of [the plaintiff's] alleged limitations throughout the remaining steps of the evaluation process").

Nevertheless, the record demonstrates that the ALJ's conclusion is supported by substantial evidence. The ALJ determined that, based on the record evidence, the alleged depression did not cause more than "mild limitations on [Rigdon's] ability to perform activities of daily living, to engage in social functioning, or to maintain concentration, persistence, and pace." [Tr., p. 14] The ALJ noted that Rigdon had never been hospitalized

for psychiatric problems. Rigdon had also never demonstrated advanced symptoms, such as hallucinations or suicide attempts. [*Id.*]

Rigdon's first mental health consultation was with therapist Marlee Ford in November 2012, just two months before the administrative hearing before ALJ Kayser. Ford noted that Rigdon was fully oriented with a depressed mood but otherwise had no abnormal thought content, no perceptual distortions, and adequate concentration and social judgment. [Tr., pp. 582–83] On December 13, 2012, Dr. George Mercado, M.D., began seeing Rigdon. During the initial examination, Rigdon was diagnosed with depressive disorder NOS. Nonetheless, similar to Ford, Dr. Mercado found that Rigdon had no memory impairment, adequate concentration and social judgment, and no abnormal thought content. He also determined that Rigdon had no suicidal or homicidal ideation and no perceptual distortions. [Tr., pp. 584–85] Also in December 2012, Dr. Mercado noted that Rigdon was irritable, had anger issues with a nephew, and was struggling with grief over the recent death a relative. [Tr., p. 595] However, the medical evidence does not demonstrate that these circumstances suggested a chronic problem. At a follow-up consultation in January 2013, Rigdon failed to make any mention of his issues with his nephew or the recent death of his relative. [Tr., p. 600] Instead, Dr. Mercado noted that Rigdon's mood was neutral, he had appropriate affects, and he had no complaints. Thereafter, in April 2013, Dr. Mercado found that Rigdon's anxiety remained controlled, his mood was stable, and he again communicated no complaints. [Tr., pp. 607–08]

In February 2012, state agency physician Richard Willens, Psy. D., reviewed the record and determined that Rigdon had not demonstrated a medically determinable mental

impairment. He noted that Rigdon had no history of a mental impairment diagnosis or mental health treatment, and failed to allege a mental impairment in his initial application materials. [Tr., pp. 75–76] Thus, the record demonstrates that the ALJ's determination that Rigdon's alleged mental impairment did not qualify as a severe impairment is supported by substantial evidence.

### B. RFC Determination

Rigdon next asserts that the ALJ failed to properly evaluate his RFC. [Record No. 14-1, pp. 5–9] Specifically, he asserts that the ALJ erred in determining that he could stand or walk for less than four hours in an eight hour workday. Further, Rigdon contends that it was improper for the ALJ not to recontact medical sources to resolve alleged conflicts in the medical evidence. [*Id.*, pp. 8–9]

RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 416.646(c). In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

Here, a review of the medical evidence demonstrates that the ALJ's conclusion that Rigdon could stand or walk for less than four hours in an eight hour workday is supported by substantial evidence. Records indicate that Rigdon was initially hospitalized in March 2011,

due to acute respiratory failure.[1] As a result, he remained hospitalized for approximately one month to receive treatment and to stabilize his condition. While hospitalized, he was diagnosed with community acquired pneumonia requiring an empyema drainage tube, and also experienced a pulmonary embolism and deep vein thrombosis. At the time of discharge in April 2011, Dr. Denis Aliker, M.D., noted that Rigdon was oxygen dependent on a tracheostomy collar and had required ventilator management. [Tr., pp. 395–401]

Following his discharge, Rigdon began seeing numerous doctors as a result of his hospitalization. He first saw Dr. Dreama Rucker, M.D. Dr. Rucker's initial assessment found that Rigdon suffered from pneumonia, acute respiratory failure, pulmonary embolism/deep vein thrombosis, COPD, and anemia. [Tr., p. 505] Thereafter, in May 2011, Dr. Rucker noted that Rigdon was "progressing well." [Tr., p. 502] Also in May 2011, Rigdon visited Dr. David Victor, M.D., who noted that a chest X-ray showed improvement in his respiratory condition. [Tr., p. 489] Later that month, Dr. Victor reported that Rigdon had marked improvement following the removal of his empyema tube, that the tube site had "healed completely," and that Rigdon's lungs were clear. [Tr., p. 488]

In June 2011, Rigdon's tracheostomy was removed and Dr. Jeffrey Wicker, M.D., noted that Rigdon was doing well without it and that he requested it be left out. [Tr., p. 542] Subsequently, Dr. Rucker noted that things were looking "really good" following the removal of the tube, that Rigdon had been progressively weaning himself off of oxygen, and that he had some shortness of breath upon exertion that was equivalent to what he experienced prior to having pneumonia. [Tr., pp. 495, 499] Thereafter, Dr. Victor reported

---

1  Rigdon asserts that his disability began at this time.

that an X-ray revealed that Rigdon's lungs were clear and there was no evidence of wheezing, rales, or rhonchi. Further, Dr. Victor stated that Rigdon's breathing was good, he was "doing extremely well," and he would "do well for the rest of his life after he stays off cigarettes." [Tr., p. 557] Dr. Rucker noted in July 2011, that Rigdon reported that he only required the use of supplemental oxygen when outside for any length of time. Conversely, when inside the house, Rigdon could go at least four hours without the use of oxygen. Dr. Rucker reported that Rigdon's breathing was "pretty good" and that he should further decrease the amount of oxygen he was using because it was becoming a "crutch." [Tr. p., 493]

In November 2011, Dr. Kathleen Monderewicz, M.D., performed a consultative examination. [Tr., pp. 508–21] During the examination, Rigdon told Dr. Monderewicz that he had not used an inhaler for the previous two to three months and did not require a CPAP machine to sleep. [Tr., pp. 514–15] Physically, Rigdon was able to perform all of the exam tasks without supplemental oxygen. He exhibited a normal gait, stable station, was comfortable sitting, and auscultation produced occasional expiratory wheezes but there were no crackles or rhonchi. Further, although Rigdon had some difficulty arising from a squat position and had mildly decreasing bending and stooping, he was able to bend, walk without an assistive device, stoop, balance, and had a full range of motion in his legs. [Tr., pp. 514–17] Dr. Monderewicz noted that the use of Rigdon's upper extremities for overhead reaching appeared mildly limited. Rigdon was also no longer receiving anti-coagulation therapy for deep vein thrombosis or phlebitis, but some bilateral lower extremity edema was reported.

[Tr., pp. 514–15] The examination demonstrated that although Rigdon was limited in some areas, he had the ability to walk normally without the use of supplemental oxygen.

Rigdon received treatment in January 2012, from Dr. Enawgaw Mehari, M.D., for exacerbation of his COPD. Dr. Mehari reported that Rigdon had no wheezing in his lungs but that he had "somewhat decreased" breathing sounds. [Tr., p. 526] At that time, Rigdon reported he used supplemental oxygen at night and during the day when needed. In February 2012, Rigdon stated that he was feeling "much better," despite chronic congestion. [Tr., p. 531] State agency medical consultant Dr. Amanda Lang, M.D., reviewed Rigdon's medical record on February 27, 2012. Dr. Lang determined that Rigdon would be able to stand or walk for six hours in an eight hour workday. [Tr., p. 78] She further stated that Rigdon had no postural limitations and had recovered from the deep venous thrombosis in his lower extremities.[2]

In April 2012, Rigdon reported taking part in a civil war reenactment where he passed out because of the heat, but recovered quickly. Later, in May 2012, Dr. Mehari found that Rigdon appeared to be winded when walking to the examination table, but that he also reported feeling better and his lungs were without wheezes. [Tr., p. 528] Finally, in June 2012, Rigdon again visited Dr. Victor who noted that Rigdon's lungs were clear on both sides with no abnormalities. [Tr., p. 556] Further, an X-ray demonstrated some haziness where the empyema was located, but that it was markedly improved overall. Dr. Victor concluded that Rigdon had a "stable respiratory status." [*Id.*]

---

2   ALJ Kayser gave some weight to Dr. Lang's medical opinions, but stated that the medical record and the Claimant's testimony supported a slightly more restrictive ability to stand or walk. [Tr., p. 20]

Taking into account all of these physical assessments, the ALJ found that Rigdon had the RFC for light work, and was able to stand and walk for less than four hours in an eight hour workday.[3]  Although the ALJ found that the Claimant's medically determinable impairments could reasonably be expected to cause the symptoms alleged, he determined that the medical evidence did not support the substantial limitations reported by Rigdon. "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted).  In the present case, review of the medical evidence demonstrates that the ALJ's RFC determination was supported by substantial evidence.

The Court also rejects Rigdon's contention that the ALJ erred by failing to recontact Dr. Victor or Dr. Monderewicz for clarity to resolve alleged conflicts in the evidence. [Record No. 14-1, pp. 7–9]  The ALJ was not required to contact either Dr. Victor or Dr. Monderewicz or seek additional evidence.  Pursuant to 20 C.F.R. § 416.920b(c), an ALJ may choose to recontact a medical source if, after weighing all the evidence in the record, he "cannot reach a conclusion about whether [the claimant is] disabled." *Id.*  Here, the evidence was sufficient to reach a conclusion regarding Rigdon's alleged disability.  Further, the ALJ was not required to recontact Dr. Victor or Dr. Monderewicz even if the evidence had not been sufficient, and his decision to "make a determination or decision based on the evidence"

---

[3]  Although Rigdon visited numerous medical sources, no medical examiner qualifying as a treating source provided a medical opinion regarding his work-related limitations.  Further, the ALJ was not required to state any reasons for rejecting or accepting any non-treating source opinions in his ruling. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

before him was a reasonable use of his discretion under the regulations. 20 C.F.R. § 416.920b(d). Thus, ALJ Kayser did not err by failing to recontact medical sources to obtain further evidence.

In conclusion, the ALJ applied the correct legal standard when determining Rigdon's RFC. Further, because substantial evidence supports the ALJ's findings regarding Rigdon's RFC, the Court finds no error with the ALJ's determination. Likewise, the ALJ did not err by failing to recontact medical sources to obtain further evidence.

### C. Hypothetical Question

Finally, Rigdon argues that ALJ erred in relying on the answer to the hypothetical question posed to VE Stambaugh because the question was based upon an inaccurate RFC. He contends that the hypothetical included no limitation regarding his ability to handle normal work stress, failed to adequately describe his functional stamina, and did not take into account the reasonable exclusion from overhead reaching imposed by Dr. Monderewicz. [Record No. 14-1, pp. 9–11]

As discussed previously, the ALJ's determinations regarding Rigdon's alleged depression and functional stamina (ability to walk and stand for up to four hours) are supported by substantial evidence. Rigdon further asserts that the hypothetical question did not take into account the "reasonable exclusion" from overhead reaching imposed by consultative examiner Dr. Monderewicz. [Record No. 14-1, p. 10] However, a review of Dr. Monderewicz's opinion shows that she found that the Claimant's "overhead reach appeared mildly limited." [Tr., pp. 77, 514–15] Further, the ALJ was not required to state any reason for rejecting or accepting Dr. Monderewicz's opinion because she was a consultative

examiner and not a treating physician. *Wilson*, 378 F.3d at 544. Regardless, the ALJ's RFC took Rigdon's ability to lift into consideration by limiting him to "lift[ing] 20 pounds occasionally and up to 10 pounds frequently," and finding that he could not climb ropes, ladders, or scaffolds. [Tr., p. 17]

The Sixth Circuit has held that a hypothetical question posed to a vocational expert "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001)). Additionally, the vocational expert's testimony relies on the ALJ's assessment of what the claimant "can and cannot do." *Id.* Here, the ALJ posed proper hypothetical questions for the vocational expert based on Rigdon's credible functional limits. First, the ALJ described a hypothetical individual of the same age, education, and work background as Rigdon. This individual could:

> lift 20 pounds occasionally, 10 pounds more frequently, stand and walk six out of eight, sit six out of eight, no limits on pushing or pulling, no climbing ropes, scaffolds or ladders, but because of breathing he's going to have limitations in exposure to temperature extremes both hot and cold, limitations on exposure to concentrated dust, fumes and chemicals, full body vibrations, humidity and wetness.

[Tr., pp. 55–56] He then revised the question to limit the hypothetical individual from prolonged standing and walking. [Tr., p. 57] This second question demonstrates that the ALJ included the RFC in his question to the vocational expert. Because substantial evidence supports the ALJ's finding on Rigdon's RFC, or what he can or cannot do, the hypothetical question posed to the vocational expert was not improper.

## IV.

The ALJ did not err in finding Rigdon's alleged depression to be a nonsevere impairment. Further, the RFC was supported by substantial evidence and the hypothetical question posed to the VE was proper. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Lonnie Cleo Rigdon's Motion for Summary Judgment [Record No. 14] is **DENIED**.

2. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 15] is **GRANTED**.

3. The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 19th day of February, 2015.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge